EX PARTE L. E. DILLEY, WILLIAM ZEA AND CHARLES S. COOPER.

No. A-7575. Decided April 13, 1960.
(334 S.W. 2d Series 425)

*Mullinax, Wells, Morris & Mauzy,* and *L. N. D. Wells, Jr.,* of Dallas, for relators.

*Clark, Reed and Clark, Robert L. Clark, Ramsey Clark* and *William L. Keller,* of Dallas, for respondent.

MR. JUSTICE SMITH delivered the opinion of the Court.

This is an original habeas corpus proceeding brought by relators L. E. Dilley, William Zea, and Charles S. Cooper; Sec-

retary, President, and Delegate, respectively, of the Dallas Building Trades Council, a labor organization (hereinafter referred to as the Council), the relators having been incarcerated under a commitment order issued pursuant to a judgment of contempt entered by the Judge of the 44th District Court of Dallas County, Texas, on November 9, 1959. The judgment decreed that the relators had violated a temporary injunction issued by that court on September 22, 1959 in a civil suit styled Dallas Plumbing Co. et al. v. Dallas Building and Construction Trades Council et al., No. 46,957B, which had enjoined the Council and certain of its constituent labor unions and persons acting for such organizations from "picketing at or near the * * * Food Warehouse and Distribution center for Wyatt Food Stores, or any other plants, locations, * * * or places of business at which Plaintiffs and their employees * * * are working and from in any manner attempting to disrupt Plaintiff's businesses, provided that this injunction is confined to picketing for the unlawful purposes disclosed by the record * * *, and is not to be construed to prevent peaceful picketing at proper places for lawful purposes, or other methods of publicizing any legitimate dispute which Defendants may have with Plaintiffs * * *."

The facts out of which this controversy arose are these: On August 26, 1959 the Council, by its Secretary L. F. Dilley, wrote a letter to Dallas Plumbing Company (hereinafter referred to as the Company), calling attention to the fact that the Company was paying its construction employees "substandard wages, substantially below those prevailing in the area for union workmen doing the same type of work, and stating that such "low" wages were a threat to the "wages that this Council is dedicated to protect." While it was stated that the Council did not seek employment or denial of employment to any person on account of membership or nonmembership in any labor organization, and that they sought no contract or arrangement prescribed by Article 5207(a) or 7426-28 of Vernon's Texas Civil Statutes, they informed the Company that if it continued to "undercut union wage conditions, * * *, this Council will be compelled to take all action lawfully available to make public your sub-standard wage conditions." The Council, acting through the relators, soon thereafter caused picketing of the Company to commence at the construction site of the "Wyatt Warehouse," the pickets walking in the public streets and carrying banners reading:

"DALLAS BUILDING AND CONSTRUCTION TRADES

COUNCIL PROTESTS PAYMENT OF SUB-STANDARD
WAGES BY DALLAS PLUMBING COMPANY.
HELP US MAINTAIN UNION WAGES."

The Company et al. thereupon on September 8, 1959 filed suit in the 44th District Court of Dallas County, Texas for, inter alia, a temporary restraining order to prevtnt such picketing by the Council and certain named labor unions, alleging that the defendants were not employees of any of the plaintiffs; the Company had no labor dispute and knew of no attempt by anyone to organize or represent its employees; the picketing was the result of a conspiracy designed to prevent plaintiffs from freely pursuing their business, and to cause all construction on the warehouse center to stop; employees of plaintiffs other than the Company (subcontractors employing only union labor) have refused to report to work, and that work has virtually stopped; that each of the plaintiffs have been damaged monetarily, and praying for temporary restraint of defendants.

The District Court on September 28, 1959, after a hearing at which relators were present, issued the temporary injunction previously mentioned, in which the court found that no controversy existed between plaintiffs and any of its employees; that the Council or other defendants represented none of plaintiffs' employees, and did not seek or intend to organize or so represent them, or to encourage them to strike, and that:

"* * * said picketing was for the sole purpose of interrupting and interfering with the construction work at the Wyatt food warehouse and distribution center and for the purpose of forcing Dallas Plumbing Company to pay its employees and the employees of said company to accept wages determined by the Defendants and in their sole discretion, without the advice, participation or consent of the employees of Dallas Plumbing Company, and without seeking to organize or represent said employees, and constitutes part of a course of conduct by which the Defendants are seeking to impose arbitrary, fixed wage scales and working conditions throughout the building and construction industry of Dallas County without the advice, consent or participation of the employees affected, and said picketing constituted a wrongful and illegal interference with the rights of Plaintiffs and others, an actionable conspiracy in restraint of trade, and violation of the anti-trust laws of the State of Texas, Articles 7426, 7428, and 7429 of the Revised Civil Statutes of the State of Texas, and Articles 1632 and 1634

of the Penal Code of the State of Texas, and further, violates the public policy of the State of Texas. * * *"

The Council's response to the show cause order asserted that the temporary restraining order should be dissolved and no temporary injunction issued for the reason that the Congress of the United States had pre-empted jurisdiction over activities of this nature, the plaintiffs being admittedly engaged in businesses affecting interstate commerce, thereby placing potential jurisdiction in the National Labor Relations Board; that the activity sought to be enjoined was protected activity under Sec. 7 of the Labor Management Relations Act, and within the defendant's right of free speech as guaranteed by the Federal and State Constitutions; and that there was a labor dispute within the meaning of the National Labor Management Relations Act between plaintiffs and defendants entitling it to peacefully picket. The motion to dissolve the temporary restraining order for lack of jurisdiction was overruled by the injunction order.

After issuance of the temporary injunction, the defendants, including the relators, sought and obtained legal advice in reference to the temporary injunction, and acting thereon the Executive Board of the Council passed a motion that the Council would picket the Company at the Wyatt warehouse. It was also agreed to picket the headquarters of the Company in Dallas.

Prior to any post-injunctive picketing, however, the Council sent a letter to the Company, in which it was stated that if the Council was not assured prior to October 12, 1959 that the Company would raise its pay standards, that "we intend to continue picketing and other lawful protest until such time as you cease undercutting our wage scales." It was also stated that their activities would be for the sole purpose of advertising that the wage scales were below their standard; that "they will not be with any purpose of interrupting and interfering with construction * * *. Nor will they be for any purpose of requiring any employee to accept any wage which is unsatisfactory to him," and that the Council sought no employment or discharge of any person by reason of membership or nonmembership in a labor union, nor any contract. A reply was sent by the Company to the Council in which the Council was apprised of the fact that the Company would stand on the rights given it by the injunction and would hold the Council fully responsible for all the consequences of its acts. Omitting further communications resulting in a one-day delay, the relators on October 13,

1959 re-commenced picketing, relator Dilley picketing on a public road immediately adjacent to the Wyatt construction work, and relators Zea and Cooper picketing on a public sidewalk adjacent to the Company's office and headquarters at 2425 McKinney Street, each of the relators carrying a banner reading as follows:

"DALLAS BUILDING AND CONSTRUCTION TRADES COUNCIL PROTESTS PAYMENT OF SUB-STANDARD WAGES BY DALLAS PLUMBING COMPANY. HELP US MAINTAIN UNION WAGES. WE ARE PICKETING ONLY DALLAS PLUMBING COMPANY."

The same day the attorney representing the Company filed an "Affidavit Showing Violation of Temporary Injunction" in reference to the relators, praying that relators be held in contempt of the temporary injunction mentioned above. The 44th District Court issued a show cause order, and relators filed its response, asserting that: (1) said District Court had no jurisdiction as the matters are to be regulated by the Labor Management Relations Act of 1947, 29 U.S.C.A. Sec. 151, et seq., and the Labor Management Reporting and Disclosure Act of 1959, 73 Stat. 519, passed September 14, 1959; (2) application of the injunction to relators would deny to them their rights of free speech aa guaranteed by the First and Fourteenth Amendments of the Federal Constitution, and Article 1, Sec. 8, of the Texas Constitution; (3) that the injunction was void in that it did not sufficiently or clearly apprise the relators of that which they were prohibited from doing; and (4) such picketing was "peaceful picketing," and expressly permitted by the injunction.

Hearing was held on November 2, 1959, and on November 9, 1959 the judgment of contempt was issued, adjudging that the relators individually picketed the Company as alleged, and that the pickets were authorized by the Council; the Mason's and Plasterer's International Union, Local Union No.5; the International Association of Bridge, Structural and Ornamental Iron Workers, Local Union No. 481; the International Hod Carriers, Building and Common Laborers, Local Union No. 518; the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry, Local Union No. 100; and the United Brotherhood of Carpenters and Joiners of America, Local Union No. 198. It was further adjudged that the picketing was authorized and deliberately engaged in by the relators and the mentioned unions with full knowledge of the injunction,

and for the identical purposes for which the original picketing was engaged in, viz., "the interruption and interference with the construction work at the Wyatt Food Store Warehouse * * *, and the forcing of Dallas Plumbing Company to pay its employees, and employees of said company to accept, wages determined by the defendants and in their sole discretion without the advice, participation or consent of the employees of Dallas Plumbing Company and without seeking to organize or represent said employees, and constituted part of a course of conduct by which the defendants were seeking to impose arbitrary, fixed wage scales and working conditions throughout the building and construction industry of Dallas County, without the advice, consent or participation of the employees affected." The judgment of contempt further recites that the defendants did not induce or encourage the employees of any employer to engage in a strike or a concerted refusal to perform any services with the object of forcing any person to cease doing business with Dallas Plumbing Company or any other person, and that the picketing was intentional and calculated to damage the Company and other plaintiffs. The defendants were adjudged guilty of contempt, relators each being given a punishment of 72 hours imprisonment and $100 fine, the maximum permitted under Article 1911, Vernon's Ann. Civil Statutes, and the named defendant labor unions were each fined $300.

The relators are here by a habeas corpus proceeding attacking the validity of the injunction involved, and the judgment of contempt and commitment order issued thereunder. By this proceeding, the relators challenge the power of the State District Court of Dallas County to issue the injunction herein, claiming that the matters involved have been pre-empted by federal legislation. They present two additional questions, but, since we have concluded to sustain the contention that the State court lacked jurisdiction, we deem it unnecessary to discuss the remaining questions.

Relators assert that the 44th District Court had no jurisdiction to issue the injunction here involved or to hold relators in contempt for the violation of its terms, since the United States Congress has pre-empted this area of labor law by passage of National Labor Relations Act, 1947 (Taft-Hartley), Secs. 151 et seq., and has placed jurisdiction of cases involving activities such as that here presented in the National Labor Relations Board.

When a suit seeking injunctive relief against labor practices

is filed in a State court that court will be held to have jurisdiction unless the evidence shows that: (1) the activity is one coming within the area covered by the Labor Management Relations Act, and; (2) the business is one affecting interstate commerce. See Dallas General Drivers, Warehousemen and Helpers v. Wamix, Inc., 156 Texas 408, 295 S.W. 2d 873; Ex Parte Twedell, 158 Texas 214, 309 S.W. 2d 834.

Since the parties stipulated at the hearing on the motion for temporary injunction that "each of the plaintiffs * * * are engaged in a business affecting interstate commerce within the meaning of Section 2(7) of the Labor Management Relations Act," and that the total dollar value of the materials and supplies utilized on the Wyatt warehouse construction site were within the jurisdictional limits established by the National Labor Relations Board, the only issue left for decision is the matter of whether jurisdiction rests in the 44th District Court of Dallas County, Texas, a State court, or is the conduct of the relators violative of, or protected by, the Labor Management Relations Act, and therefore within the exclusive jurisdiction of the National Labor Relations Board.

We have concluded that the conduct attributed to relators arguably comes within the protection afforded by Section 7[1] of the Act.

In reaching this conclusion, we have taken cognizance of the definitions of "labor organization" and "labor dispute" as contained in the Act. "Labor Organization" is defined in Sec. (2)5 of the Act as including an organization "dealing with employers concerning grievances, *labor disputes*, wages, rates of pay, hours of employment, or conditions of work." The type of *labor dispute* referred to in the Act included "any controversy concerning terms, tenure, or conditions of employment, or concerning the association or representative of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, *regardless of whether the disputants* stand in a proximate relation of employer and employee." (Section 2(9)).

---

1—"Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purposes of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in Section 8 (a) (3)."

Relators contend that the finding of the trial court as contained in both the temporary injunction and the contempt judgment that the "picketing was for the purpose of" interruption "and interference with the construction work at the Wyatt Food Warehouse and distribution center * * *" clearly brings the involved activities within the protection of Section 7 of the federal labor law, thereby depriving the state courts of jurisdiction. The respondent company, on the other hand, contends that neither the language of the federal law, nor the legislative intent of such Act was meant to encompass union conduct which, as found in the contempt judgment, was done "without seeking to organize or represent said employees," and was not an attempt to "engage in, induce or encourage the employees of any employer to engage in a strike or concerted refusal in the course of their employment to perform any services with the object of forcing any person to cease doing business with Dallas Plumbing Company or any other person."

The federal act recognizes that a labor organization can negotiate for changes in working conditions even when no employees are represented. In Weber v. Anheuser-Busch, Inc., 348 U.S. 468, 99 L. Ed 546, 75 S. Ct. 480, the United States Supreme Court made clear that the pre-emption doctrine applies whether the conduct charged is prohibited by Section 8 or protected by Section 7. The Court said:

"Where the facts reasonably bring the controversy within the sections prohibiting these practices, and where the conduct, if not prohibited by the federal Act, may be reasonably deemed to come within the protection afforded by that Act, the state court must decline jurisdiction in deference to the tribunal which Congress has selected for determining such issues in the first instance."

We feel compelled in the light of United States Supreme Court decisions to hold that the 44th District Court is without jurisdiction in the present case. See San Diego Trades Council v. Garmon, 353 U.S. 26, 1 L. Ed. 2d 618, 77 S. Ct. 6-7 (1957), and Guss v. Utah Labor Relations Board, 353 U.S. 1, 1 L. Ed. 2d 601, 77 S. Ct. 598 (1957). Since these decisions, the United States Supreme Court has decided the Second "Garmon" case, 359 U.S. 236, 3 L. Ed. 2d 775, 79 S. Ct. 773. In that case the court held that when an activity is arguably subject to the Act, the States as well as the federal courts must defer the determination of that question in the first instance to the "exclusive competence of the National Labor Relations Board if

the danger of State interference with National Policy is to be averted."

Shortly after the second "Garmon" case was rendered, the United States Supreme Court decided Plumbers Etc. 298 v. County of Door, 359 U.S. 354, 3 L. Ed. 2d 872, 79 S. Ct. 844, which laid down further rules dispositive of this proceeding. There the court, when presented with allegations that union picketing of a courthouse construction project was an attempt by the union to force one Zahn, a nonunion subcontractor, and the County which authorized the construction work to stop doing business with each other, or alternatively to coerce Zahn into making his employees organize a union shop, held that jurisdiction was with the National Labor Relations Board and that it was error for the Wisconsin Supreme Court to exercise jurisdiction.

In Elle Construction Co. et al v. Pocatello Bldg. & C. Tr. Council, 77 Idaho 514, 297 P. 2d 519 (1956), the Idaho Supreme Court held that a state court had jurisdiction to enjoin picketing of a plant employing CIO employees by the Council who represented the member of A F of L who were present at the plant site under the terms of a reconstruction contract entered into between the plant owner and Elle Construction Co. The Council had objected to the partial use of the CIO regular employees of the plant in the reconstruction work, but, during negotiations, agreed that they would not object to the use of the CIO employees if such were paid the wages that the A F of L men received under their contract for such construction work. Simiar to the facts here, neither the regular CIO employees nor their representatives had any objection to their wage rate, or to doing the reconstruction work. The Idaho Supreme Court rejected the Council's contention that the state courts had no jurisdiction in view of 29 U.S.C.A. Secs. 101 to 115 and 29 U.S.C.A. Secs. 151-168, and affirmed the issuance of the injunction. The United States Supreme Court, however, reversed the decision in a memorandum decision, 352 U.S. 884, I L. Ed. 2d 82, 77 S. Ct. 130, citing Weber v. Anheuser-Busch, Inc., supra.

The injunction involved in the present case forbade, inter alia, the disruption of the Company's business in any manner, and the post-injunctive picketaing was found by the trial court in the judgment of contempt to have been peaceful, but for the purpose, inter alia, of "the interruption and interference with the construction work at the Wyatt Food Store Warehouse * * *." The finding of the court that one of the purposes of the

picketing was the "forcing of Dallas Plumbing Company to pay its employees, and employees of said company to accept, wages determined by the defendants * * * and constituted part of a course of conduct by which the defendants are seeking to impose arbitrary, fixed wage scales and working conditions throughout the building and construction industry of Dallas County * * * may well be one of the "concerted activities for the purpose of * * * other mutual aid or protection" encompassed by Section 7.

Respondents rely upon the case of Hughes et al. v. Superior Court of California for Contra Costa County, 339 U.S. 460, 74 L. Ed. 985, 70 S. Ct. 718 (1950), to support their contention for state jurisdiction. The question there was whether or not the injunction in that particlar case violated Hughes' right of freedom of speech as guaranteed by the Due Process Clause of the Fourteenth Amendment. Pre-emption was not an issue. The court simply held that a state could properly prohibit picketing for an unlawful purpose.

We do not hold that we would never have power to regulate activities in any way relating or touching the Labor Management Relations Act, even though such affected interstate commerce. There now seem to be four means or circumstances under which a state court will be held to have power to regulate, although it would not or might not otherwise be so empowered in light of federal pre-emption. They are: (1) When jurisdiction has been ceded to the state by the National Labor Relations Board pursuant to a cession agreement made under authority of Section 10(a) of the federal labor law (29 U.S.C.A. Sec. 160(a)). There has been no such cession agreement made with the State of Texas. Ex Parte Twedell, supra; Guss v. Utah Labor Relations Board, supra; (2) Where the activity is of merely "peripheral concern" of the Labor Management Relations Act. or in which the conduct "touched interests so deeply rooted in local feelings and responsibility that * * * we could not infer that Congress had deprived the States of the power to act." San Diego Bldg. Trades Council v. Garmon, supra; International Association of Machinists v. Gonzales, 356 U.S. 617, 2 L. Ed. 2d 1018, 78 S. Ct. 923. The conduct involved in the present case strikes at the very essence of the federal labor law as contained in Section 7, and does not involve merely the right of an employee to recover damages for lost wages, for suffering, for compensation, or as a punitive measure for his having been prohibited access to the plant of his employment, or for other tort claims. In this connection, it is to be noted

that even this sphere of state regulation was further narrowed by the "Second Garmon" case, supra, which held that California could not award damages against a union for picketing which was tortious under California Law, since the picketing arguably constituted a "concerted activity" within Section 7 and therefore regulation by the state, through injunction *or* by the award of damages, had been displaced; (3) Where jurisdiction has not been declined, but has been clearly refused by the National Labor Relations Board. See both Garmon cases, Weber, County of Door, and Guss cases, all cited supra. This exception to pre-emption appears not to be applicable, for no case has been cited or found in which the National Labor Relations Board has refused jurisdiction upon facts sufficiently analogous to override the strong policy directive cast upon us; and (4) Where the conduct involved constitutes violence or threats to the public order. See International Union, United Auto. Workers v. Russell, 356 U.S. 634, 2 L. Ed. 2d 1030, 78 S. Ct. 932; Youngdahl v. Rainfair, Inc. 355 U.S. 131, 2 L. Ed, 2d 151, 78 S. Ct. 206; and United Auto. A. & A. I. Workers v. Wisconsin Employment Relations Board, 351 U.S. 266, 100 L. Ed. 1162, 76 S. Ct. 794. This exception is not applicable for the activity of the Council here was admittedly peaceful, with no violence or threats to the public order.

From what we have said, it follows that the 44th District Court of Dallas County was without jurisdiction to issue the injunction. The relators having been released from custody of the Sheriff of Dallas County, Texas, upon furnishing of bond, are now completely discharged and found not guilty of contempt, and they and their sureties are released from further liability by virtue of the terms of the said bond.

Opinion delivered April 13, 1960.