**SOUTH ATLANTIC & GULF COAST DISTRICT OF INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, INDEPENDENT, et al., Appellants,**

v.

**HARRIS COUNTY–HOUSTON SHIP CHANNEL NAVIGATION DISTRICT, Appellee.**

No. 13985.

Court of Civil Appeals of Texas.

Houston.

May 31, 1962.

Rehearing Denied June 21, 1962.

Mandell & Wright, Arthur J. Mandell, Houston, for appellants International Longshoremen's Ass'n Local 872. Sewall Myer, Houston, for appellants South Atlantic & Gulf Coast District of the International Longshoremen's Ass'n, Independent, Ralph A. Massey as Representative of the District, Paul F. Koehne, as Representative of the District, International Longshoremen's Ass'n, Local No. 1273, Willie C. Wells and Jim Clark as Representatives of Local 1273, International Longshoremen's Ass'n Local No. 1530, and Lloyd Allen as Representative of Local No. 1530.

L. G. Clinton, Paul R. Robertson, J. L. Lockett, Jr., Houston, Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, of counsel, for appellee.

COLEMAN, Justice.

This is an appeal from an order temporarily enjoining appellant, International Longshoremen's Association, Local 1530,

from engaging in any strike or concerted work stoppage against appellee, Harris County-Houston Ship Channel Navigation District, and temporarily enjoining the South Atlantic and Gulf Coast District of the International Longshoremen's Association, Independent, and International Longshoremen's Association, Locals 872 and 1273, from establishing and/or maintaining a picket line or picket lines at or adjacent to the premises of and directed against the appellee. The order also enjoined a number of persons in their individual and representative capacities, as well as all officers, agents, representatives, servants, employees and members of those unions.

Harris County-Houston Ship Channel Navigation District (hereinafter referred to as The District) is a governmental agency of the State of Texas, and a political subdivision thereof, existing under Art. XVI, Sections 52 and 59, of the Constitution of the State of Texas, Vernon's Ann.St.

The District owns and operates wharves, warehouse facilities, grain elevators and bulk materials handling facilities in competition with private industry in the Port of Houston. It is engaged in interstate and foreign commerce.

During the year 1961 The District constructed a bulk materials handling plant at a cost of approximately $4,000,000.00 raised by the sale of bonds repayable from the revenue to be derived from the operation of said plant and the other facilities owned by The District. This plant began operations on or about September 21, 1961 and prior to that date The District had assigned its employees to the various jobs involved in its operation.

Prior to the completion of the plant Local 1530, from whom The District's employees had been selected, and Locals 872 and 1273 disputed among themselves as to jurisdiction over the workmen to be employed in the new plant. Locals 872 and 1273 requested that The District employ workmen for work similar to that customarily performed by longshoremen through their hiring halls. Ralph A. Massey, President of the South Atlantic and Gulf Coast District of the International Longshoremen's Association, Independent, requested a meeting with The District and the Locals. At this meeting the differences were made known to Mr. J. P. Turner, General Manager of The District, who informed the meeting that he felt that the work was not longshoremen work and that he proposed to assign the work to members of The District's operating and maintenance group (members of Local 1530). Thereafter Mr. Massey submitted a plan of dividing the work among the Locals to The District and the Locals and stated that the executive officers of the International District were insisting that the Locals concur in this plan. Mr. Turner informed all interested parties that he was assigning the work to the maintenance and operating group. Another meeting was held on or about January 5, 1962, at which Mr. Turner denied renewed requests that the work be assigned according to the International District's plan. The following day two pickets carrying signs advertising a labor dispute were posted on the only road leading into the bulk materials handling plant. The District's employees refused to cross the picket lines and The District was unable to unload a waiting ship at that plant. The ship was moved to another dock, after which the pickets were removed.

The jurisdictional dispute between the Locals was settled between the Locals involved, but The District, insisting on its right to assign the work to its employees in the operations and maintenance group, brought suit for injunction resulting in the order from which this appeal was taken.

At the trial representatives of Locals 872 and 1273 testified that they were still requesting the work and intended to use all peaceable means to secure it for their membership. They testified that they could not say whether they would or would not post pickets again if another attempt was made to use the facilities of the bulk loading plant.

■ Appellate courts will not disturb the order of a trial court granting a temporary injunction to preserve the status quo unless the trial judge abused the broad discretion vested in him in determining the necessity for such action. Transport Co. of Texas v. Robertson Transports, 152 Tex. 551, 261 S.W.2d 549; Texas Foundries v. International Moulders & Foundry Workers' Union, 151 Tex. 239, 248 S.W.2d 460. A careful study of the testimony reveals no such abuse of discretion. While appellants contend that there was no evidence of irreparable damage, we cannot agree. The record shows that appellee has been effectively denied the use of a $4,000,000.00 plant and that as a result it has suffered a loss of revenue. The evidence sustains the trial court's finding that appellants threaten to continue picketing the plant. We think this sufficient evidence of irreparable injury in view of the fact that private facilities in Port Houston and other ports are available for use by prospective customers.

However appellants say that the trial court lacks jurisdiction to issue the injunction because exclusive jurisdiction over the matter is granted to the National Labor Relations Board by the National Labor Relations Act (Title 29 U.S.C.A. § 151 et seq.) and, in support of their contention, rely on such cases as Guss v. Utah Labor Relations Board, 353 U.S. 1, 77 S.Ct. 598, 1 L.Ed.2d 601; Amalgamated Meat Cutters and Butcher Workmen of North America, Local No. 427, AFL v. Fairlawn Meats, Inc., 353 U.S. 20, 77 S.Ct. 604, 1 L.Ed.2d 613; and San Diego Building Trades Council, Millmen's Union Local 2020 v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775.

■ Appellants assert that in no case do the State courts of Texas have jurisdiction of a labor relations matter affecting interstate commerce, citing Ex parte Twedell, 158 Tex. 214, 309 S.W.2d 834, and Ex parte Dilley, 160 Tex. 522, 334 S.W.2d 425. We do not consider that the cases cited stand for the proposition urged. The State courts clearly have jurisdiction to enforce collective bargaining agreements although the employer is engaged in interstate commerce. Charles Dowd Box Co., Inc. v. Courtney et al., 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483. Ex parte Dilley, supra, held:

"We do not hold that we would never have power to regulate activities in any way relating or touching the Labor Management Relations Act, even though such affected interstate commerce. There now seem to be four means of circumstances under which a state court will be held to have power to regulate, although it would not or might not otherwise be so empowered in light of federal pre-emption. They are: (1) When jurisdiction has been ceded to the state by the National Labor Relations Board pursuant to a cession agreement made under authority of Section 10(a) of the federal labor law (29 U.S.C.A. § 160(a)). * * * Ex parte Twedell, supra; Guss v. Utah Labor Relations Board, supra; (2) Where the activity is of merely 'peripheral concern' of the Labor Management Relations Act, or in which the conduct 'touched interests so deeply rooted in local feelings and responsibility that * * * we could not infer that Congress had deprived the States of the power to act.' San Diego Bldg. Trades Council v. Garmon, supra; International Association of Machinists v. Gonzales, 356 U.S. 617, 78 S.Ct. 923, 2 L.Ed.2d 1018. * * * (3) Where jurisdiction has not been declined, but has been clearly refused by the National Labor Relations Board. See both Garmon cases, Weber [Weber v. Anheuser-Busch, Inc., 348 U.S. 468, 75 S.Ct. 480, 99 L.Ed. 546], County of Door [Plumbers, etc., 298 v. County of Door, 359 U.S. 354, 79 S.Ct. 844, 3 L.Ed.2d 872], and Guss cases, all cited supra. * * *; and (4) Where the conduct involved constitutes violence or threats to the public order."

Certainly this case stands for the proposition that the State courts are not deprived of jurisdiction merely because an

employer (as that word is defined in the Labor Relations Act) is engaged in interstate commerce.

The conduct enjoined by the trial court (striking against a governmental agency of the State of Texas, and picketing the agency for the purpose of inducing or causing its employees to engage in a strike or organized work stoppage) is conduct which "touched interests so deeply rooted in local feelings and responsibility * * *" within subdivision (2) set out in the Dilley case. In addition the fact that the National Labor Relations Board has clearly refused, and not merely declined, jurisdiction in labor disputes between governmental agencies of the State and its employees would seem to bring this case within subdivision (3) quoted above from the Dilley case.

We note also that in Ex parte George, 358 S.W.2d 590, the Supreme Court of Texas said:

"Relator refers to our opinion in Ex parte Dilley, supra, wherein we said: 'There now seems to be four means or circumstances under which a state court will be held to have power to regulate, although it would not or might not otherwise be empowered in light of federal pre-emption.' He contends that none of the four circumstances exist in the instant case. It should be noted that the four means or circumstances we mentioned were stated in more or less general terms. We did not mean to place a limitation upon the circumstances under which a state court will be held to have power to regulate."

The National Labor Relations Act, 29 U.S.C.A. § 152(2) and (3), provides: "The term 'employer' * * * shall not include * * * any state or political subdivision * * *.

"The term 'employee' * * * shall not include any individual employed * * * by any other person who is not an employer as herein defined."

■ The National Labor Relations Board has given effect to the unambiguous exclusionary wording of Sections (2) and (3). Papermakers Importing Co., Inc., 116 N.L.R.B. 267; New Bedford Steamship Authority, 127 N.L.R.B. 1322. The same result has been reached by the Supreme Courts of Georgia, International Longshoremen's Association v. Georgia Ports Authority, 217 Ga. 712, 124 S.E.2d 733; Oklahoma, International Brotherhood, etc. v. Grand River Dam Authority, Okl., 292 P.2d 1018, and Tennessee, City of Alcoa v. International Brotherhood of Electrical Workers, 203 Tenn. 12, 308 S.W.2d 476. The National Labor Relations Act does not purport to regulate labor relations between subdivisions of a state, such as appellee, and its employees. Therefore appellants' conduct was neither prohibited nor protected by the provisions of the National Labor Relations Act.

■ The courts of this State have jurisdiction to prohibit by injunction peaceable picketing for an unlawful purpose even though freedom of speech is thereby restricted. Hughes v. Superior Court of California for Contra Costa County, 339 U.S. 460, 70 S.Ct. 718, 94 L.Ed. 985; Ex parte George, supra; Cain, Brogden & Cain, Inc. v. Local Union No. 47, etc., 155 Tex. 304, 285 S.W.2d 942.

■■ Appellants attack the court's finding of fact that the picketing was for the purpose of inducing appellee's employees to engage in a strike or organized work stoppage. In Ex parte George, supra, the Supreme Court held that evidence that George picketed the gates used by the refinery's employees to go to work was sufficient to show that the purpose of the picketing was to induce those employees to honor the picket line, thereby breaching the no-strike provision of their contract. This case, therefore, is authority for the proposition that refusal to cross a picket line is a strike or organized work stoppage, and that placing pickets on the only road leading·into the bulk handling plant would be

evidence that the purpose of the activity was to induce appellee's employees to honor the picket line. Art. 5154c, § 3, Vernon's Ann.Tex.St., provides that it shall be against the public policy of the State of Texas for public employees to engage in strikes or organized work stoppages against the State of Texas or any political subdivision thereof. We think it follows that the public policy of this State forbids any person or organization to induce or seek to induce a public employee to engage in such a strike. In view of this holding, we think it unnecessary to determine whether or not the evidence in this case establishes that a purpose of the picketing was to secure from The District a collective bargaining contract or recognition as a collective bargaining agency, purposes which are also forbidden by Art. 5154c. Cain, Brogden & Cain, Inc. v. Local Union No. 47, etc., 155 Tex. 304, 285 S.W.2d 942; Texas State Federation of Labor v. Brown and Root, Inc., 246 S.W.2d 938, Tex.Civ.App.. ref., n. r e.

▇ We do not think that the provision of Art. 5154c, V.A.T.S., declaring it to be the public policy of this State that employees of the State or a political subdivision thereof shall not have the right to strike, or our decision that public policy prohibits peaceable picketing for the purpose of inducing such a strike, violates any constitutional guarantee secured to any of the appellants by either the Constitution of the United States of America or the Constitution of the State of Texas. In Hughes v. Superior Court, 339 U.S. 460, 70 S.Ct. 718, 94 L.Ed. 985, the Supreme Court of the United States said:

> " '[T]he domain of liberty, withdrawn by the Fourteenth Amendment from encroachment by the states,' Palko v. State of Connecticut, 302 U.S. 319, 327, 58 S.Ct. 149, 153, 82 L.Ed. 288, no doubt includes liberty of thought and appropriate means for expressing it. But while picketing is a mode of communication it is inseparably something more and different.

Industrial picketing 'is more than free speech, since it involves patrol of a particular locality and since the very presence of a picket line may induce action of one kind or another, quite irrespective of the nature of the ideas which are being disseminated.' * * *

> " * * * However general or loose the language of opinions, the specific situations have controlled decision. It has been amply recognized that picketing, not being the equivalent of speech as a matter of fact, is not its inevitable legal equivalent. Picketing is not beyond the control of a State if the manner in which picketing is conducted or the purpose which it seeks to effectuate gives ground for its disallowance. * * * 'A state is not required to tolerate in all places and all circumstances even peaceful picketing by an individual.' "

In International Brotherhood of Teamsters, etc. v. Vogt, 354 U.S. 284, 77 S.Ct. 1166, 1 L.Ed.2d 1347, the Supreme Court of the United States, after reviewing previous cases, stated: "This series of cases, then, established a broad field in which a State, in enforcing some public policy, whether of its criminal or its civil law, and whether announced by its legislature or its courts, could constitutionally enjoin peaceful picketing aimed at *preventing effectuation of that policy.*" (emphasis added)

Courts of other states have upheld state statutes prohibiting strikes against governmental agencies where these constitutional questions were raised. City of Detroit v. Division 26 of Amalgamated Association, etc., 332 Mich. 237, 51 N.W.2d 228, appeal dismissed 344 U.S. 805, 73 S.Ct. 37, 97 L. Ed. 627, rehearing denied 344 U.S. 882, 73 S.Ct. 164, 97 L.Ed. 683; City of Los Angeles v. Los Angeles Bldg. & Const. Trades Council, 94 Cal.App.2d 36, 210 P.2d 305; I. L. A. v. Georgia Ports Authority, 217 Ga. 712, 124 S.E.2d 733.

Whether or not appellee was engaged in a governmental function or a proprietary

function in the operation of the bulk loading plant is immaterial to a decision of this case. 31 A.L.R.2d 1145, at p. 1149; City of Alcoa v. International Brotherhood of Electrical Workers, 203 Tenn. 12, 308 S.W. 2d 476; City of Los Angeles v. Los Angeles Bldg. & Construction Trades Council, supra; Bennett v. Brown County Water Improvement District, 153 Tex. 599, 272 S. W.2d 498.

We have found it unnecessary to consider assignments of error Nos. 15 and 16 relating to the sufficiency of the evidence to support certain findings of fact presented on behalf of appellant Local No. 872. The evidence is sufficient to sustain all other findings of fact made by the trial court.

The judgment of the trial court is affirmed.