**INTERNATIONAL ASSOCIATION OF MA-CHINISTS AND AEROSPACE WORKERS, Appellant,**

**v.**

**Jesse L. STEPHENS d/b/a Stephens Buick Company, Appellee.**

**No. 6964.**

Court of Civil Appeals of Texas.

Beaumont.

Jan. 30, 1969.

Dixie, Wolf & Hall, Houston, for appellant.

Simmons, Sanders & Graves, Orange, for appellee.

KEITH, Justice.

The Appellants' (Defendants below) Motion for Rehearing is granted, the prior opinion of this Court is set aside, and this opinion is filed in lieu thereof.

The appeal is from a judgment of the District Court permanently enjoining the local union, its business agent, Foster, and C. D. Bell from picketing near the premises where the Plaintiff, Stephens, did business as a Buick dealer in the City of Orange. The trial was to the Court and no findings of fact or conclusions of law were filed.

Stephens alleged that after the Union had participated in and lost an employee

representation election conducted by National Labor Relations Board on February 22, 1967, it began picketing his place of business on March 18, 1967, carrying signs which asserted that the business was "unfair" and also "substandard in its wages, hours and working conditions." Further allegations were to the effect that the business agent had made threats against Stephens as well as seeking union recognition. It was alleged that the picketing was unlawful since there was no lawful labor dispute between the parties and that the "real purpose of said picketing is to force recognition of the Union in violation of Federal Statutes." Alleging, also that the picket sign was a written misrepresentation of the facts because "there are no substandard wages, hours or working conditions," Stephens averred that the picketing, being for an unlawful purpose, was in violation of Article 5154d, Sec. 3, Vernon's Ann.Civ.St.

The Defendants answered by a verified plea to the jurisdiction which asserted:

(a) Plaintiff was an "employer" and the Union was a "labor organization" within the meaning of the Labor Management Relations Act, 1947, and were thereby covered;

(b) Bell, an employee of Plaintiff and a union adherent had engaged in concerted activities with fellow employees in support of the union (apparently referring to his activities in the recent election);

(c) Following Bell's discharge by Plaintiff, the Union representative (Foster) attempted to discuss with Plaintiff the cause of the discharge and would have sought his reinstatement; but,

(d) Plaintiff ordered both Foster and Bell from his premises and refused to discuss the matter with either;

(e) The picketing which followed immediately was claimed to be protected by the Act of Congress;

(f) Denying that the purpose of the Union was to obtain recognition, the plea asserted "that whether or not such picketing is for the purpose of forcing recognition of Defendant Union in violation of federal statutes is a matter covered by said Act of Congress which awards exclusive jurisdiction for the correction of violations thereof to the National Labor Relations Board and preempts the application of any state law to the facts of such alleged violation."

From these allegations, the Defendants drew the conclusion:

"* * * that the picketing complained of in Plaintiff's Original Petition is either guaranteed and protected picketing under Section 7 of the said Act of Congress which protects the rights of concerted activities, or, in the alternative, is picketing prohibited by the said Act of Congress. In the alternative, the matter complained of in Plaintiff's Petition is arguably protected or arguably prohibited by the said Act of Congress. In either case exclusive jurisdiction for the adjudication and prevention of such conduct or for the establishment of such rights on the part of Defendants, if they exist, is a matter for the exclusive determination of the National Labor Relations Board and a matter of which this Court has no jurisdiction."

The answer of the Defendants, in addition to the general denial, asserted (a) the picketing complained of "is in the exercise of rights guaranteed by Section 7 of the Labor Management Relations Act, 1947, as amended;" and (b) such picketing constitutes the exercise of freedom of speech as protected by the First and Fourteenth Amendments to the Constitution of the United States. Finally, the answer asserted, by reason of the facts alleged, the peaceful picketing of Plaintiff's business on account of the discharge of Bell was lawful and the discharge of Bell constituted a reasonable basis therefor.

The Court carried the plea to the jurisdiction along with the case; and, at the conclusion of the trial, enjoined the De-

fendants in substantially the language of the Plaintiff's Petition.

It was established by the undisputed evidence that the Plaintiff was engaged in interstate commerce under the coverage of the Labor Management Relations Act, 1947, as amended, 29 U.S.C.A. Sec. 158(a), et seq., as were the employees, including Bell (Sec. 157), and the Union [Sec. 158(b)].[1] The record is not as clear as to just when Bell became a member of the Union, if indeed he did, but it is undisputed that he acted as a Union watcher at the election held on February 22, 1967—at which time the Union lost.

Following his discharge, Bell filed an unfair labor practice charge against Plaintiff with N.L.R.B., but it was denied. Plaintiff also sought to file a complaint with N.L.R.B. charging the picketing was for recognition within the one-year period following an election. General Counsel of N.L.R.B. declined to issue a complaint thereon.

The evidence, considered in its most favorable light to Stephens in support of the judgment as entered shows: Bell to have been employed by Plaintiff as a mechanic for 14 years. He received a fifty-fifty commission with a $100.00 per week guarantee. The flat rate manual was a part of the employment agreement between them. This meant that on warranty jobs which were to be reimbursed by the Buick Motor Division, there was an established number of hours for each type of work to be performed. At the time of the events made the basis of their suit, Buick Motor Division was paying at the rate of $5.50 per hour, even though Plaintiff was paying his mechanics at the rate of $6.00 per hour on the warranty jobs. On March 14, 1967, a customer brought a 1967 Buick which was using oil excessively to Plaintiff's place of business and requested that

Bell perform the work. Bell dismantled the motor and certain parts were ordered from Houston. After the parts had arrived, on the morning of March 17, 1967, it was observed that Bell was not working on the job and he was called into the office by Plaintiff late in the afternoon. When asked why he was not working, Bell replied: "It's just too cheap. I won't work that cheap."

The service manager who was present was asked about the number of hours that Bell was to be paid for the job. The service manager told Plaintiff the number of hours set out in the flat rate manual had been checked with the Buick Company and found to be correct. The number of hours according to the 1967 flat rate manual had been cut from the number used during the previous year. Plaintiff told Bell to go back to work or punch out. Bell punched out. The next morning, March 18, 1967, Bell and Foster, the Union Representative, came to Plaintiff's place of business and were ordered out by Plaintiff. Foster told Plaintiff he represented Bell, and if Plaintiff did not talk to Foster, he, Foster, would put up a picket line. Plaintiff refusing to talk, the picket line was established later in the day.

Plaintiff and Bell both testified that during the prior year, involving the same customer's older car, a dispute had arisen as to the pay Bell was to receive for work done under a warranty on flat rate manual time. Complaint by him resulted in his being paid $50.00 "net" rather than $37.50. Since the Plaintiff made an explanation of the matter to the apparent satisfaction of the trial court, we mention it only for the purpose of showing that at least once before, when a complaint had been made by Bell that the flat rate manual was "too cheap", his complaint had been heeded. Here it was not. The point simply serves

---

1. The Labor Management Relations Act, 1947, will be referred to hereinafter simply as the "Act"; National Labor Relations Board will be designated "N.L.R.B.", the Union as such and Foster, the representative of Union either by his surname or by "representative"; Bell will be designated by his surname or as the "employee". Stephens will be called either, by his surname or "Plaintiff".

to buttress the Defendants' claim that wages were actually involved in the dispute, not necessarily a decisive question in this record.

Indeed, Plaintiff testified upon cross-examination as to the occasion involved herein:

"Q. Was there a difference of opinion between Mr. Bell and your service manager as to how many hours should be allowed for the doing of that job?

A. Evidently there was.

&ast; &ast; &ast; &ast; &ast; &ast;

Q. &ast; &ast; &ast; did you understand that day, Friday, that Mr. Bell wanted more money to do that job than you were offering?

A. No.

Q. Or that he wanted more time credit?

A. He stated that he wouldn't do it that cheap."

There is no dispute in the evidence as to the fact that Bell wanted more hours to complete the job than Plaintiff was willing to allow therefor. More hours, under the undisputed record, would have meant more money for Bell. Bell simply equated hours to money and determined that the complete job was "too cheap."

On appeal, the Defendants urge four points, which we now quote:

1. "The Court erred in overruling Defendants' plea to the jurisdiction based upon pre-emption of the subject matter of the suit by the Labor Management Relations Act, 1947.

2. "The injunction violates Defendants' rights of free speech protected by the First and Fourteenth Amendments to the Constitution of the United States.

3. "The picketing was lawful under Texas law and was erroneously enjoined.

4. "The terms of the injunction are illegally vague."

We sustain the first point, making it unnecessary for us to discuss the remaining complaints.

The parties are in agreement with this statement found in the Defendants' brief:

"Admittedly, Plaintiff-Appellee, a Buick dealer, was engaged in interstate commerce and was thus covered by the Labor Management Relations Act, 1947, as amended, 29 U.S.C.A. Sec. 158(a), et seq., as were the employees, 29 U.S.C.A. Sec. 157, and the Union, 29 U.S.C.A. Sec. 158(b)."

There is no significant dispute between the parties as to the wording of the sign carried by the pickets although Plaintiff testified that the size of the letters was different on the two signs used. These words were shown thereon: "Unfair to", "Substandard conditions, Machinists Union Local 1457." There was no complaint of violence, mass picketing, trespass, threats, cursing, etc., so frequently urged in this type of litigation.

■ The answer to the point is clear and we have no choice but to follow the controlling and positive language of the cases from the United States Supreme Court as well as those from our own Supreme Court. Both of these high courts have determined that when the Congress adopted the Taft-Hartley Act in 1947, it intended to, and did, pre-empt the labor field and vested exclusive jurisdiction in the National Labor Relations Board. The effect of this entry into the field was, of course, to oust the State Courts of jurisdiction of all matters protected, prohibited, or arguably protected or prohibited by that Act. San Diego Bldg. Trades Council, etc. v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959); Guss v. Utah Labor Relations Board, 353 U.S. 1, 77 S.Ct. 598, 1 L.Ed.2d 601 (1957); Amalgamated Meat Cutters, etc. v. Fairlawn Meats, Inc., 353 U.S. 20, 77 S.Ct. 604, 1 L.Ed.2d 613 (1957);

Ex Parte George, 371 U.S. 72, 83 S.Ct. 178, 9 L.Ed.2d 133 (1962).

The decisions of our own Supreme Court are in accord with the general proposition enunciated in the cases cited in the preceding paragraph, except it should be noted that there was some difficulty, *at first*, in adapting the Court's thinking to the pre-emption doctrine as it applied to those cases "arguably" within the sphere of protected or prohibited activities. [Ex Parte George, 163 Tex. 103, 358 S.W.2d 590 (1962),[2] vac. 371 U.S. 72, 83 S.Ct. 178, 9 L.Ed.2d 133 (1962), and mandate conformed to in 364 S.W.2d 189 (Tex.Sup., 1963)]. However, the complete pre-emption doctrine is now firmly fixed in our State law and must not only be recognized by all of our courts but willingly and ungrudgingly followed. Ex Parte Twedell, 158 Tex. 214, 309 S.W.2d 834 (1958); Ex Parte Dilley, 160 Tex. 522, 334 S.W.2d 425 (1960); Dallas General Drivers, Warehousemen and Helpers v. Wamix, Inc., 156 Tex. 408, 295 S.W.2d 873 (1956).

■ If, we assume, arguendo, as contended by Stephens, the picketing activity by the Union was illegal as being for recognition after having lost the election a month earlier, the simple answer is that the picketing was illegal under the provisions of 29 U.S.C.A. Sec. 158(b) (7). N.L.R.B., and not the District Court of Orange County, had exclusive jurisdiction to determine the dispute. *Second Garmon Case*, supra (359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775); Ex Parte Dilley, supra (334 S.W.2d at 430).

Stephens' reliance upon Office Employees Int. U. v. Houston Lighting & P. Co., 314 S.W.2d 315 (Austin Tex.Civ.App., 1958, ref. n. r. e.) is misplaced. This case, if it still has any viability, is so far distinguishable upon the factual structure of this case as to be inapposite. Bell's discharge followed his refusal to work "so cheap" and no one contends, as was done

with success in *Office Employees*, that he was discharged for incompetence. He was, on the contrary, one of the best mechanics in Stephens' employ and one with fourteen years' experience on that job. Preferring to follow the decisions of our two Courts of last resort, as set out in the preceding paragraphs, we decline the invitation of Stephens to make *Office Employees* applicable here.

Stephens contends that because his charges filed with N.L.R.B. against the Union were not accepted by General Counsel, the case "is not arguably" within the Labor Management Relations Act "and the National Labor Relations Board's jurisdiction and therefore not pre-empted by the Federal Act." In so advancing this position, Stephens points to the fact that he had sought to file charges against Bell and the Union which "were not accepted by" N.L.R.B. He reasons therefrom that the Board inferentially found no unfair labor practices or any violation of the Federal Act. Hence, so the argument goes, the District Court of Orange County had jurisdiction to hear and determine the matter, free of any federal pre-emption theory. The contention so advanced will not stand in the face of the established law on the subject.

The decisive answer is found in the *Second Garmon Case*, supra, (359 U.S. at 246, 79 S.Ct. at 780) from which we quote:

"In that case [Guss v. Utah Labor Relations Board, 353 U.S. 1, 77 S.Ct. 598, 609, 1 L.Ed.2d 601] we held that the failure of the National Labor Relations Board to assume jurisdiction did not leave the States free to regulate activities they would otherwise be precluded from regulating. *It follows that the failure of the Board to define the legal significance under the Act of a particular activity does not give the States the power to act.* In the absence of the Board's clear determination that an activity is neither

2. **Chief Justice Calvert** joined by **Justice Norvell**, filed a strong dissent in *George*. 358 S.W. 2d at 600.

protected nor prohibited or of compelling precedent applied to essentially undisputed facts, it is not for this Court to decide whether such activities are subject to state jurisdiction. The withdrawal of this narrow area from possible state activity follows from our decisions in Weber [Weber v. Anheuser-Busch, Inc., 348 U.S. 468, 75 S.Ct. 480, 99 L.Ed. 546] and Guss [supra]. The governing consideration is that to allow the States to control activities that are *potentially* subject to federal regulation involves too great a danger of conflict with national labor policy." (Emphasis supplied.)

Stephens' contention, lacking merit or judicial support, is not sustained.

 It follows from what has been said that we are of the opinion that the Trial Court was without jurisdiction to hear and determine the suit since the entire field had been pre-empted by the provisions of the Taft-Hartley Act. In so holding, however, we are mindful that this Court still retains *some* jurisdiction over labor disputes. Perhaps one of the better expressions of the matter is to be found in the opinion of Justice Smith, speaking for a unanimous Court in Ex Parte Dilley, supra (334 S.W.2d 425, 431) to which we refer. None of the four exceptions therein delineated exist in our case.

So holding, the first point is sustained.

The result we have reached in this instance is required by the decisions of our Courts of last resort and the fact that there exists what has been termed "a vast No-Man's land, subject to no regulation by any agency or court" presents a situation not within the control of an intermediate state court. (See: Ex Parte Twedell, supra, 309 S.W.2d at 845).

We do not, under the holding made in this case, reach Appellants' remaining points. If the Court below had no jurisdiction to hear and determine the case, and we have so held, there is no useful purpose to be served in writing upon the points involving the legality, *vel non*, of the picketing activity or the scope of the order entered. Such comment would constitute obiter dictum, and these points are not entitled to further consideration.

The judgment of the Trial Court is in all things reversed, the permanent injunction dissolved, and judgment here rendered dismissing the cause for want of jurisdiction.

Reversed and dismissed.