CARPENTERS & JOINERS LOCAL UNION NO. 1097, Appellant,

v.

Charles HAMPTON, Appellee.

No. 511.

Court of Civil Appeals of Texas, Tyler.

July 16, 1970.

Rehearing Denied Aug. 13, 1970.

Stephenson & Thompson, Ward Stephenson, Orange, for appellant.

Colley & Lloyd, Paul S. Colley, Henderson, for appellee.

MOORE, Justice.

This is an appeal from a judgment of the District Court temporarily enjoining Carpenters & Joiners Local Union No. 1097 and Barney Ray from picketing near the premises where the plaintiff was engaged in the business of constructing a housing project for Rusk Terrace Charitable Trust in the City of Henderson. Trial was before the court sitting without a jury and no findings of fact or conclusions of law were filed.

The record shows that on December 4, 1969, plaintiff, Charles Hampton, as general contractor, entered into a construction contract with Rusk Terrace Charitable Trust, agreeing to construct a housing project in the City of Henderson, Texas. Under the terms of the contract, Hampton agreed to pay the prevailing wage scale conforming to those being paid to employees on similar types of work in the Henderson area. Subsequently, he entered into a subcontract with P & R Construction Company for the carpentry work to be performed on the project. Under the terms of the subcontract, it was agreed that the carpenters were to be paid at the rate of $4.20 per hour. Nothing in the general contract nor in the subcontract required the general contractor or the subcontractor to employ union labor. In other words, both Hampton and P & R Construction Company were operating on what is known as an "open shop" basis, employing workmen without regard to whether they were members of a labor union or not. After Hampton had signed the contract as general contractor, but prior to the time work was commenced, Hampton was visited by Colly Heim, a representative of the carpenters' union who requested the employment of all union carpenters on the construction job. According to the testimony presented by Hampton, Heim requested him to sign a contract agreeing to hire members of the local carpenters' union or to arrange with the subcontractor to hire members of the local carpenters' union at the rate of $4.30 per hour. He left a copy of the contract at Hampton's office for his signature. Hampton refused to sign the contract because at that time he had already executed a contract with P & R Construction Company in which it was agreed that P & R would employ carpenters at the rate of $4.20 per hour, the prevailing rate. Hampton advised Heim that since he had already signed the contract which did not provide for the hiring of union carpenters,

he could not force his subcontractor to change the contract and therefore he was not in a position to sign a contract with the union. Work was commenced on the construction project. Shortly thereafter, the union caused a single picket to be posted at the entrance of the construction site carrying a sign which read as follows:

"This is to advise the public that Charles Hampton Construction Company does not employ members of nor does it have a contract with Carpenters Local Union No. 1097."

As a result of the posting of the picket, the employees of the electrical contractor on the job refused to cross the picket line. This resulted in a partial cessation of the work. P & R Construction Company then attempted to negotiate a contract with the appellant whereby both union and non-union carpenters would be permitted to work on the job at the rate of $4.30 per hour. P & R requested that a temporary permit be issued to its non-union employees so that they could work alongside the union employees. The union suggested that the problem could be resolved by hiring union carpenters or by having the company's employees join the union. P & R refused to follow the suggestion. Whereupon, Colly Heim, the local agent, advised Hampton and P & R that he would do all he could to shut the job down; that it was either all union or no union.

While the picketing had the effect of causing a cessation of work, it is without dispute that there was no violence, mass picketing, trespass, nor was there any evidence of obscenity or profanity or threats of violence at any time.

As grounds for injunctive relief, appellee Hampton alleged that no labor controversy or dispute existed between him and his employees or between the subcontractor and its employees and that the construction work was being done under an "open shop" arrangement whereby the contractors and subcontractors agreed not to discriminate on account of membership or non-membership of employees in labor unions or other labor organizations. Hampton further alleged that the purpose of the picketing in this instance was for the sole and only purpose of forcing him and P & R Construction Company to discriminate against non-union workmen and to require them to employ only members of the Carpenters Union in violation of what is known as the Texas "Right to Work" Act, Art. 5207a, Vernon's Ann.Tex.Civ.Sts.[1] His prayer was for a temporary restraining order, temporary injunction and for a permanent injunction on final hearing.

The trial court issued a temporary restraining order without notice and following a hearing, granted appellee a temporary injunction restraining appellant, its agents and employees from picketing the construction site pending a final hearing. The judgment recites that the trial court found that no labor dispute existed and that the picketing by the appellant was for the unlawful purpose of causing the appellee and his subcontractors to discriminate against non-union workers. The appellant labor union duly perfected this appeal.

1. Article 5207a, V.A.T.S., provides in part as follows:

"Section 1. The inherent right of a person to work and bargain freely with his employer, individually or collectively, for terms and conditions of his employment shall not be denied or infringed by law, or by any organization of whatever nature.

"Section 2. No person shall be denied employment on account of membership or nonmembership in a labor union.

"Section 3. Any contract which requires or prescribes that employees or applicants for employment in order to work for an employer shall or shall not be or remain members of a labor union, shall be null and void and against public policy. The provisions of this Section shall not apply to any contract or contracts heretofore executed but shall apply to any renewal or extension of any existing contract and to any new agreement or contract executed after the effective date of this Act."

On appeal appellant attacks the judgment on the ground that the trial court was without jurisdiction. In advancing this position, appellant says that the subject matter of the suit was within the exclusive jurisdiction of the National Labor Relations Board under the authority granted by National Labor Relations Act, 29 U.S.C.A., Sec. 158(b). We have concluded that this contention must be sustained.

It is undisputed that appellee had purchased approximately $200,000.00 worth of goods and merchandise from outside the State of Texas. The undisputed evidence therefore establishes that appellee Hampton was engaged in interstate commerce under the National Labor Relations Act, 29 U.S. C.A., Sec. 158(b) et seq.

As we view the record, the facts in the present case are, for all practical purposes, on all fours with the case of Local No. 438 Construction and General Laborers' Union, AFL–CIO v. Curry, 371 U.S. 542, 83 S.Ct. 531, 9 L.Ed.2d 514 (1963). This decision, as we view it, is controlling in the instant case. In that case, as in this, the general contractor and subcontractor operated on the "open shop" basis. After the general contractor had awarded several subcontracts, the representatives of the union called upon the general contractor and attempted to persuade him to use union labor exclusively. Being unsuccessful, the union representative stated that he would use every means at his command to see that union workmen were employed. Subsequently the union posted a single picket, which resulted in a partial cessation of work. At the instance of the general contractor, the Supreme Court of Georgia enjoined the union from picketing on the ground that the purpose of the picketing was to force the employer to employ only union labor or to be unable to comply with its contract and was in violation of the Georgia right-to-work law.[2]

In reversing the Georgia Court, the U. S. Supreme Court in *Curry*, supra, said:

"* * * The allegations of the complaint, as well as the findings of the Georgia Supreme Court, made out at least an arguable violation of § 8(b) of the National Labor Relations Act, 29 U.S.C. § 158(b).[4] Consequently, the state court had no jurisdiction to issue an injunction or to adjudicate this controversy, which lay within the exclusive powers of the National Labor Relations Board. Plumbers, etc., of Local No. 298, A. F. of L. v. Door County, 359 U.S. 354, 359, 79 S.Ct. 844, 847, 3 L.Ed.2d 872; San Diego Bldg. Trades Council, etc., Local 2020 v. Garmon, 359 U.S. 236, 244–245, 79 S.Ct. 773, 779, 3 L.Ed.2d 775; Hotel Employees Union, Local No. 255 v. Sax Enterprises, Inc., 358 U.S. 270, 79 S.Ct. 273, 3 L.Ed.2d 289; Weber v. Anheuser-Busch, Inc., 348 U.S. 468, 478, 481, 75 S.Ct. 480, 486–488, 99 L.Ed. 546; Garner v. Teamsters, etc., Union No. 776, 346 U.S. 485, 489–491, 74 S.Ct. 161, 165–166, 98 L.Ed. 228. Nor is the jurisdiction of the Georgia courts sustainable, as respondents urge, by reason

---

2. See 217 Ga. 512, 123 S.E.2d 653.

 The Georgia right-to-work law, Ga.Code, Sec. 54–804, provides:

 "*Compelling persons to join, or refrain from joining, labor organization, or to strike or refrain from striking.*—It shall be unlawful for any person, acting alone or in concert with one or more other persons to compel or attempt to compel any person to join or refrain from joining any labor organization, or to strike or refrain from striking against his will, by any threatened or actual interference with his person, immediate family, or physical property, or by any threatened or actual interference with the pursuit of lawful employment by such person, or by his immediate family."

 The Georgia Supreme Court also referred to Ga.Code, Sec. 66–9906, which provides:

 "*Unlawfully preventing laborers, etc., from performing duties.*—Any person or persons, who, by threats, violence, intimidation, or other unlawful means, shall prevent or attempt to prevent any person or persons from engaging in, remaining in, or performing the business, labor, or duties of any lawful employment or occupation, shall be guilty of a misdemeanor."

of the Georgia right-to-work law and by § 14(b) of the National Labor Relations Act, 29 U.S.C. § 164(b). This precise contention has been previously considered and rejected by this Court. Local Union 429, etc., v. Farnsworth & Chambers Co., 353 U.S. 969, 77 S.Ct. 1056, 1 L.Ed.2d 1133, reversing 201 Tenn. 329, 299 S.W.2d 8. The Georgia Supreme Court clearly exceeded its power in authorizing the issuance of a temporary injunction."

4. Sections 8(b) (1) (A), 8(b) (2), 8(b) (4) (B), and 8(b) (7) (C) provide, in pertinent part:
    "(b) It shall be an unfair labor practice for a labor organization or its agents—
    "(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 7 * * *;
    "(2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a) (3) or to discriminate against an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership;
    * * * * *
    "(4) (i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is—
    * * * * *
    "(B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of section 9: *Provided,*

That nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing;
    * * * * *
    "(7) to picket or cause to be picketed, or threaten to picket or cause to be picketed, any employer where an object thereof is forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees, or forcing or requiring the employees of an employer to accept or select such labor organization as their collective bargaining representative, unless such labor organization is currently certified as the representative of such employees:
    * * * * *
    "(C) where such picketing has been conducted without a petition under section 9(c) being filed within a reasonable period of time not to exceed thirty days from the commencement of such picketing: *Provided,* * * * That nothing in this subparagraph (C) shall be construed to prohibit any picketing or other publicity for the purpose of truthfully advising the public (including consumers) that an employer does not employ members of, or have a contract with, a labor organization, unless an effect of such picketing is to induce any individual employed by any other person in the course of his employment, not to pick up, deliver or transport any goods or not to perform any services.
    "Nothing in this paragraph (7) shall be construed to permit any act which would otherwise be an unfair labor practice under this section 8(b)."

The decision in *Curry,* supra, was subsequently cited with approval by the U. S. Supreme Court in Retail Clerks Int. Ass'n, L. 1625 v. Schermerhorn, 375 U.S. 96, 84 S.Ct. 219, 11 L.Ed.2d 179 (1963), wherein the court held that picketing in order to get an employer to execute an agreement to hire all union labor in violation of a state union-security statute lies exclusively in the federal domain.

■ It follows from what we have said that we are of the opinion that we are bound by the foregoing decisions and the trial court was without jurisdiction to determine the suit since it appears that practically the entire field of national labor policy has been preempted by federal law under the provisions of the National Labor

Relations Act. However, as pointed out in International Association of Machinists & Aerospace Workers v. Stephens, 437 S.W. 2d 917 (Tex.Civ.App., Beaumont, 1969, n. w. h.), state courts still retain some jurisdiction over labor disputes, but are limited to those situations set forth by the Supreme Court of this State in Ex Parte Dilley, 160 Tex. 522, 334 S.W.2d 425. None of the four situations delineated there exists here.

For the reasons stated, the judgment of the trial court must be reversed, the temporary injunction dissolved, and judgment here rendered dismissing the cause for want of jurisdiction.

Reversed and dismissed.