SAN ANTONIO BUILDING AND CON-
STRUCTION TRADES COUN-
CIL, Appellant,

v.

WARRIOR CONSTRUCTORS, INC., et al.,
Appellees.

No. 14793.

Court of Civil Appeals of Texas,
San Antonio.

May 27, 1970.

Rehearing Denied May 5, 1971.

Edward W. Penshorn, San Antonio, for appellant.

Frank S. Manitzas, Clemens, Knight, Weiss & Spencer, San Antonio, Robert S. Banbace, Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, for appellees.

CADENA, Justice.

This is an appeal by defendant, San Antonio Building and Construction Trades Council, an unincorporated association, from an order temporarily enjoining the maintenance by defendant of a single peaceful picket at the site of a construction project.

The suit was filed by Warrior Constructors, Inc., and the San Antonio Chapter of Associated General Contractors, Inc. Warrior, as general contractor, was engaged in the construction of one of the buildings owned by Southwestern Bell Telephone Company in San Antonio. In carrying out its contract, Warrior employed members of several craft unions. Each of the craft unions had entered into a separate collective bargaining agreement which had been negotiated by General Contractors on behalf of its members, including Warrior. These contracts, in addition to "no strike" clauses, contained provisions for the orderly settlement of grievances.[1]

The Trades Council took no part in the negotiation of any of the collective bargaining agreements, nor was it a party to any agreement.

The Trades Council, which holds a charter from the National Building and Construction Trades Council, is a labor organization whose membership consists of three representatives from each of the various craft unions. Among other things, the Trades Council concerns itself with safety conditions at construction sites. It does not represent any union in collective bargaining negotiations. It has its own officers and it pays its expenses from its own funds which consist of dues paid to the Trades Council by the various unions.

During the course of the construction of the telephone building addition, a dispute arose concerning the safety of working conditions at the site. As a result of this

---

1. The contracts contained provisions safeguarding the right of union members to refuse to cross picket lines under certain circumstances.

dispute, the Trades Council posted a single picket at the construction site. The picket carried a sign stating, "This Job Is Unsafe. S. A. Bldg. and Constr. Trades Council." It is undisputed that the picketing was peaceful. Because of the presence of the picket, Warrior's employees refused to continue work on the project.

Plaintiffs base their application for injunction on Sec. 4 of Article 5154d, Vernon's Ann.Tex.Rev.Civ.Stat.Ann., which makes it unlawful "for any person, singly or in concert with others, to engage in picketing, the purpose of which, directly or indirectly, is to secure the disregard, breach, or violation of a valid subsisting labor agreement arrived at between an employer and the representatives selected or designated by the employees for the purpose of collective bargaining, or certified as the collective bargaining unit under the provisions of the National Labor Relations Act."

The Trades Council here contends that the trial court erred in overruling its plea to the jurisdiction, since the dispute is cognizable exclusively by the National Labor Relations Board.

■ At the outset, we deny plaintiffs' motion urging that, since work at the construction project has been completed, the question is moot. The Supreme Court of the United States has held that the question of whether a state court exceeded its power by enjoining picketing at a construction site is not rendered moot by the completion of construction where the organization authorizing the picketing asserts that exclusive jurisdiction lies in the National Labor Relations Board. Liner v. Jafco, 375 U.S. 301, 84 S.Ct. 391, 11 L.Ed.2d 347 (1963).

The keystone of the current preemption doctrine[2] is the decision by the Supreme Court in San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), reversing a California state court judgment awarding an employer damages for harm resulting from peaceful picketing which was an unfair labor practice under state law. "When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield. * * * At times it has not been clear whether the particular activity regulated by the States was governed by § 7 or § 8 or was, perhaps, outside both these sections. But courts are not primary tribunals to adjudicate such issues. It is essential to the administration of the Act that these determinations be left in the first instance to the National Labor Relations Board. * * * When an activity is *arguably subject* to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." 359 U.S. at 244–245, 79 S.Ct. at 779 (emphasis added).[3]

2. See, generally, Michelman, State Power to Govern Concerted Employee Activities, 74 Harv.L.Rev. 641 (1961).

3. The rationale of the preemption doctrine has taken several forms. a. Preemption of state jurisdiction is necessary to avoid conflict between federal and state remedies applicable to the same conduct. Weber v. Anhauser-Busch, Inc., 348 U.S. 468, 479, 75 S.Ct. 480, 99 L.Ed. 546 (1955). b. Primary jurisdiction to determine questions arising under the federal labor legislation has been vested in the National Labor Relations Board. Local 25, International

Board of Teamsters v. New York, N. H. & H. R.R., 350 U.S. 151, 161, 76 S.Ct. 227, 100 L.Ed. 166 (1956). c. It has been indicated that the federal labor legislation represents a comprehensive system of federal labor regulation, Garner v. Teamsters Union, 346 U.S. 485, 489–491, 499–500, 74 S.Ct. 161, 98 L.Ed. 228 (1953), in which congressional failure to regulate indicates an intent that there be no regulation. See Cox & Seidman, Federalism and Labor Relations, 64 Harv.L.Rev. 211, 216 (1950). In Garmon, five justices, speaking through Mr. Justice Frankfurter, clearly based their conclusion on primary jurisdiction

Garmon recognized two exceptions to the preemption rule. "However, due regard for the presuppositions of our embracing federal system * * * has required us not to find withdrawal from the States of power to regulate where the activity regulated was a merely peripheral concern of the Labor Management Relations Act. See International Association of Machinists v. Gonzales, 356 U.S. 617, 78 S.Ct. 923, 2 L.Ed.2d 1018. Or where the regulated conduct touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act." 359 U.S. at 243–244, 79 S.Ct. at 779.

As the language makes clear, the exception concerning cases involving activity which is "a merely peripheral concern" of the federal regulatory scheme was intended to explain I. A. M. v. Gonzales, 356 U.S. 617, 78 S.Ct. 923, 2 L.Ed.2d 1018 (1958), which held that the federal legislation did not displace state power to allow a wrongfully expelled union member to recover damages resulting from the breach of his union membership contract. Gonzales has been limited in its application to cases involving purely internal union matters. Local 100 of the United Association of Journeymen and Apprentices v. Borden, 373 U.S. 690, 696–697, 83 S.Ct. 1423, 10 L.Ed. 2d 638 (1963).

The exception applicable to cases where the conduct touches interests "deeply rooted in local feeling and responsibility" is a rationalization of cases upholding state remedies for injuries resulting from violence. Wellington, Labor and the Federal System, 26 U. of Chi.L.Rev. 542, 553 (1959).

■ In this case, it is undisputed that the dispute between the parties is cogniz-

able by the National Labor Relations Board, since the facts are sufficient to satisfy the jurisdictional standards established by the Board and announced in Siemons Mailing Service, 122 N.L.R.B. 81 (1958). Without attempting to determine whether the picketing by the Trades Council would amount to an unfair labor practice within the meaning of Sec. 8 of the N.L.R.A. (29 U.S.C. Sec. 158), we conclude that the activity enjoined is at least "arguably" protected by Sec. 7 (29 U.S.C. Sec. 157), which protects the right to "self-organization, to form, join or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, * * *." It is clear that where picketing is arguably protected by Sec. 7, a Texas court may, not base an injunction against such picketing on the provisions of Article 5154d, Sec. 4. Ex parte George, 371 U.S. 72, 83 S.Ct. 178, 9 L.Ed.2d 133 (1962). "In the absence of the Board's clear determination that an activity is neither protected nor prohibited or of compelling precedent applied to essentially undisputed facts, it is not for this Court to decide whether such activities are subject to state jurisdiction." San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 246, 79 S.Ct. 773, 780, 3 L.Ed.2d 775 (1959).[4]

Plaintiffs insist, however, that the trial court had jurisdiction under Sec. 301(a) of the N.L.R.A. (29 U.S.C. Sec. 185), which provides that suits for violation of collective bargaining contracts between employers and labor organizations may be brought in the United States District Courts without respect to the amount in controversy or the citizenship of the parties.

grounds, specifically rejecting the conflict-of-remedies rationale. 359 U.S. at 247, 79 S.Ct. 773.

4. Three members of the present Court, expressing the view that state regulation is preempted only where the concerted

activity is "actually, rather than arguably," prohibited or protected, have urged that Garmon be reconsidered. International Longshoremen's Local 1416, AFL–CIO v. Ariadne Shipping Co., Ltd., 397 U.S. 195, 90 S.Ct. 872, 25 L.Ed.2d 218, 223 (1970).

Sec. 301 has been interpreted to mean that both state and federal courts may entertain suits for enforcement of collective bargaining agreements, Charles Dowd Box Co. v. Courtney, 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962), although in such suits both state and federal courts must apply federal law. Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). In Sec. 301 suits, the broad preemption doctrine announced in Garmon does not apply. Thus, in Smith v. Evening News Ass'n., 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962), it was held that a court may entertain a Sec. 301 suit even though the breach of the contract also amounted to an unfair labor practice under Sec. 8. See also Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of America v. Lucas Flour Co., 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962).

However, Sec. 301 is explicitly applicable only to suits for violation of "contracts between an employer and a labor organization * * *." The allegations in this case do not assert a breach by defendant Trades Council of a contract to which it is a party, but merely accuse the Trades Council of inducing the breach of contracts between plaintiffs and other labor organizations. If the Trades Council induced the breach of the contracts between Warrior and the labor organizations representing its employees, then it would be guilty of a tort, 3 Restatement, Torts, Sec. 776 (1939), but a suit to recover damages for such conduct would sound in tort, and cannot be classified as an action for violation of the contracts. Curtis Bay Towing Co. v. National Maritime Union of America, 206 F.Supp. 741 (E.D.Pa. 1962); Aacon Contracting Co. v. Ass'n. of Catholic Trade Unionists, 178 F.Supp. 129 (E.D.N.Y.1959), aff'd., 276 F.2d 958.

In the cases relied on by plaintiffs, the conduct complained of was that of a party

to the collective bargaining agreement. E. g., Smith v. Evening News Ass'n., supra; Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). Here plaintiffs alleged that defendant Trades Council is "not a party to any collective bargaining agreement with the plaintiffs, nor with any of plaintiffs' subcontractors * * *."

We conclude that, in the absence of any contractual relationship between plaintiffs and defendant, Sec. 301 is inapplicable. Under the preemption rules announced in Garmon, the trial court had no power to enjoin the peaceful picketing.

The temporary injunction is dissolved.

On Motion for Rehearing

Rehearing Denied.

BARROW, Chief Justice (concurring in the result).

I concur in the result. The construction project has been completed and all relief sought herein by appellees has been moot for more than a year. Therefore, there is no justiciable controversy between the parties herein. It is now settled that Texas Courts lack constitutional authority to render advisory opinions. United States Life Insurance Company v. Delaney, 396 S.W.2d 855 (Tex.1965). The case of Liner v. Jafco, 375 U.S. 301, 84 S.Ct. 391, 11 L.Ed.2d 347 (1964), which is relied on by the majority to support our jurisdiction, relates only to the jurisdiction of the United States Supreme Court. In any event, it could not operate to extend the constitutional authority of this Court. Since the case is moot, I would dissolve the temporary injunction for this reason without consideration of the merits. Zuniga v. U. S. Investors, Inc., 453 S.W.2d 811 (Tex.1970).