**DALLAS GENERAL DRIVERS, WARE-HOUSEMEN AND HELPERS LO-CAL 745, et al., Appellants,**

v.

**CENTRAL BEVERAGE, INC., Appellee.**

No. 18320.

Court of Civil Appeals of Texas, Dallas.

March 14, 1974.

Rehearing Denied April 4, 1974.

Chuck Miller, Roseborough & Curlee, Dallas, for appellants.

Durwood D. Crawford, Seay, Gwinn, Crawford & Mebus, Dallas, for appellee.

GUITTARD, Justice.

The union appeals from a temporary injunction restraining picketing by more than two striking employees within fifty feet of each entrance to the employer's premises. Our questions are (1) whether state-court jurisdiction to grant injunctive relief against picketing in a labor dispute is limited to situations involving violence or imminent threats to public order, under §§ 7

and 8 of the National Labor Relations Act, 29 U.S.C. §§ 157, 158 (1973), as interpreted in San Diego Building Trades Council, Millmen's Union, Local 2020 v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), and (2) whether the evidence at the temporary injunction hearing would justify a finding that such a situation existed in this case. We hold that the court's jurisdiction is so limited, and we reverse because no violence or imminent threat to public order was shown.

In *Garmon* the rule of pre-emption was announced in the following language:

> When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted. 359 U.S. 245, 79 S.Ct. 780.

The opinion recognized several exceptional situations in which state-court jurisdiction had been upheld. The employer seeks to bring the present injunction within one of these exceptions, stated in the opinion as follows:

> . . . where the regulated conduct touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act. 359 U.S. 244, 79 S.Ct. 779.

All the cases cited by the Court as examples of this exception involved violence or threats of violence. In discussing these cases, the Court observed that recovery of damages in tort for "conduct marked by violence and imminent threats to the public order," and also injunctive relief restraining such conduct, had been permitted "because the compelling state interest, in the scheme of our federalism, in the maintenance of domestic peace is not overridden in the absence of clearly expressed congressional direction." 359 U.S. 247, 79 S. Ct. 781.

Among the cases cited by the Court as examples of this exception was Youngdahl v. Rainfair, 355 U.S. 131, 78 S.Ct. 206, 2 L.Ed.2d 151 (1957), on which the employer here relies. The *Youngdahl* decision was expressly based on the ground that abusive language and other insulting acts directed by pickets toward employees who continued to work "were calculated to provoke violence and were likely to do so unless promptly restrained." 355 U.S. 139, 78 S. Ct. 211.

The Supreme Court reaffirmed this limitation of state-court jurisdiction in United Mine Workers v. Gibbs, 383 U.S. 715, 734, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Although that case originated in the federal court, recovery was sought under state law. Damages were claimed against a national union as a result of picketing which had been accompanied by actual violence on the part of members of an affiliated local union. Applying the rule laid down in *Garmon*, the Court held that the trial court erred in instructing the jury that unlawfulness of the picketing was the controlling consideration in the recovery of damages. The court said that this charge was error because it did not "focus the jury's attention upon violence or threats of violence as the essential predicate of any recovery it might award."

Texas courts also have recognized that this particular exception to federal preemption is based on "violence or threats to the public order." Ex parte Dilley, 160 Tex. 522, 334 S.W.2d 425, 432 (1960); International Association of Machinists and Aerospace Workers v. Stephens, 437 S.W. 2d 917, 922 (Tex.Civ.App., Beaumont 1969, no writ). The same limitation is supported by various legal writers. Broomfield, Pre-Emptive Federal Jurisdiction Over Concerted Trespassory Union Activity, 83 Harv.L.Rev. 552, 560, 565 (1970); Come, Federal Pre-Emption of Labor-Management Relations, 56 Va.L.Rev. 1435, 1439 (1970); Cox, Labor Law Pre-Emption Revisited, 85 Harv.L.Rev. 1337, 1338 (1972); Michelman, State Power to Govern Con-certed Employee Activities, 74 Harv.L.Rev. 641, 666 (1961); The Enforcement of the Right of Access in Mass Picketing Situations, 113 U.Pa.L.Rev. 111, 122 (1964).

In Genesco, Inc. v. Joint Council 13, United Shoe Workers, 230 F.Supp. 923, 931 (S.D.N.Y.1964) mass picketing was held to stand on the same footing with other picketing so long as it does not block access to and from the struck premises and no physical violence is threatened.

■ Under these authorities we must reverse the order granting the temporary injunction unless the evidence here would support a finding of "conduct marked by violence or imminent threats to the public order." The trial court found and recited that in addition to two pickets at each entrance to the employer's property, the defendants had placed, permitted and encouraged other striking employees in numbers of twelve or more to station themselves in front of or adjacent to the premises, that the number of such persons was "intimidating and threatening to the employees, suppliers and customers desiring to enter the premises," and that such conduct "is likely to cause a breach of the peace or to cause intimidation to employees desiring to enter said premises." These findings amount to something less than a finding of "conduct marked by violence or imminent threats to the public order."

Neither would the evidence support such a finding. The employer is a distributor of beer and other beverages and admittedly was engaged in interstate commerce within the coverage of the National Labor Relations Act. The striking employees were truck drivers. The evidence shows that after the strike began the strikers parked their cars all along the curb in the dead-end street running in front of the employer's premises and scattered themselves up and down the length of the street, lounging on their cars or standing around. One of the women office workers testified that she saw thirteen or fifteen men on the curbs and walking back and forth across

the street. After some hesitation she went into the building, but was "scared." Another woman employee testified that she was concerned for her safety when she saw the number of people in front of the entrance, but that she decided to go in because Mr. Craiker, one of the company's officers, was out by the curb and walked in with her. The fears of these witnesses appear to have been inspired by the presence of the strikers rather than by anything they said or did.

Craiker testified that three temporary employees were crossing the street and were about to pass through an eight-foot opening between the parked cars when they were confronted by three striking employees. The two groups stopped some five or six feet from each other. Craiker walked down to the area and said, "You men come on through," and the strikers stepped aside. This is the only instance in which access to the premises is said to have been "blocked," even temporarily. Craiker further testified that the driver of a truck for an industrial gas company had turned back at the picket line when he sought to make a delivery, but was sent back again and was stopped by two strikers who said something to him. Craiker said that he walked up and told the driver to drive on and he did so, but he was trembling and his voice was "shaky." The cause of his agitation is not otherwise explained.

The employer's president, Mr. Fitzhugh, testified that he felt it was necessary to walk some employees to their cars. In his opinion, the presence of such a large group of pickets who would attempt to engage workers in conversation they might not be interested in was "a very explosive and inflammatory situation." The details of these attempts at conversation are not disclosed. So far as appears, they may have been nothing more than requests to respect the picket line. The evidence shows no actual denial of access and no conduct that was threatening, abusive, or even impolite. There was some hearsay about threats and slashing of tires, but no competent evidence of such conduct, and its connection with the picketing was not shown.

The employer insists that the strike necessarily involved tension and that mere presence of between twelve and twenty strikers in front of the premises amounted to a threat of violence. If such a threat was implied, however, it did not rise to the level of an "imminent threats to the public order" as required for state-court jurisdiction by *Garmon* and the cases following it. Any nonviolent coercion of nonstriking employees resulting from the number of strikers peaceably assembled in front of the employer's premises was at most conduct "arguably prohibited" by § 8(b)(1) of the National Labor Relations Act, which provides that it shall be an "unfair labor practice" for a union to restrain or coerce employees in the exercise of their right to continue working. Consequently, such conduct was within the exclusive jurisdiction of the National Labor Relations Board. *Cf.* Local No. 438 Construction & General Laborers' Union v. Curry, 371 U.S. 542, 83 S.Ct. 531, 9 L.Ed.2d 514 (1963).

■ Finally, we note that the order in this case recites that the injunction was issued under authority of Tex.Rev.Civ.Stat. Ann. art. 5154d (Vernon 1971) which declares "mass picketing" to be a misdemeanor and defines the offense to include any form of picketing in which there are "more than two (2) pickets at any time within either fifty (50) feet of any entrance to the premises being picketed, or within fifty (50) feet of any other picket or pickets." The injunction by its terms limits the picketing according to the numbers and distance formula prescribed by this statute. We hold that article 5154d cannot expand the state court's equitable jurisdiction into the domain pre-empted to the National Labor Relations Board by the National Labor Relations Act, as interpreted in *Garmon*.

The order appealed from is reversed and the temporary injunction is dissolved, but

without prejudice to any subsequent application for injunctive relief against "conduct marked by violence or imminent threats to the public order."